**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CALVIN WALKER
ADC #100722                                                                                     PETITIONER

VS.                                              5:07CV00213 JTR

LARRY NORRIS, Director,
Arkansas Department of Correction                                              RESPONDENT

**MEMORANDUM AND ORDER**

**I.  Background**

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket entry #1.)  Respondent has filed a Response (docket entry #6), to which Petitioner has filed a Reply.  (Docket entry #14.)  Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the pertinent procedural history of this case.  On August 23, 2002, Petitioner was convicted of delivery of cocaine following a jury trial in Ashley County Circuit Court.  (Docket entry #13, Trial Tr. at 211-12.)  Petitioner was sentenced to 420 months in the Arkansas Department of Correction.

Petitioner appealed his conviction to the Arkansas Court of Appeals, where he argued that the cocaine should not have been admitted into evidence because a proper chain of custody was not established.  On April 27, 2005, the Arkansas Court of Appeals held that Petitioner's argument was not preserved for appellate review and affirmed.  *Walker v. State*, 2005 WL 958741 (Ark. Ct. App. April 27, 2005) (unpublished decision).

---

[1]The parties have consented to proceedings before a United States Magistrate Judge. (Docket entry #7.)

On July 18, 2005, Petitioner filed a Rule 37 Petition in Ashley County Circuit Court raising numerous claims for postconviction relief. (Docket entry #11, Ex. C. at 44-53.) On August 8, 2005, the trial court entered an Order denying the Petition without a hearing. (Docket entry #11, Ex. C at 61-65.) On appeal from the denial of Rule 37 relief, the Arkansas Supreme Court affirmed. *Walker v. State*, 367 Ark. 523, 241 S.W.3d 734 (2006).

In this § 2254 federal habeas action, which was filed on August 15, 2007, Petitioner argues that: (1) trial counsel represented him under a conflict of interest; (2) he was deprived of his right to choice of counsel when his attorney failed to inform Petitioner of his health problems; (3) trial counsel was ineffective in failing to make a chain-of-custody objection to the cocaine introduced at trial; and (4) he was denied a "fundamentally fair" Rule 37 proceeding because he was denied an evidentiary hearing and because he was not allowed to obtain discovery of trial counsel's file.

For the reasons discussed below, the Court concludes that Petitioner's habeas claims have no merit.[2] Thus, the Petition will be denied, and the case will be dismissed, with prejudice.

---

[2]Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may not obtain relief with respect to any claim adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A presumption of correctness attaches to factual determinations made by a state court, and a habeas petitioner must rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## II. Discussion

**A.     Trial Counsel's Conflict of Interest**

According to Petitioner, his retained trial lawyer, R.S. McCullough ("McCullough"), was under an ethics investigation, by the Arkansas Supreme Court Committee on Professional Conduct, at the time of his trial.[3]  (Docket entry #1 at 5.)  Petitioner asserts that the pending ethics investigation created a "potential conflict of interest" that resulted in him receiving ineffective assistance of counsel.[4]

In Petitioner's Rule 37 appeal, the Arkansas Supreme Court rejected this claim, noting that to prevail on a claim of ineffective assistance of counsel, due to a conflict of interest, a defendant must demonstrate either an actual conflict of interest, or "in the absence of an actual conflict, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Walker*, 367 Ark. at 526, 241 S.W.3d at 737.  The Court concluded that Petitioner did not sustain this burden:

> The investigation of trial counsel by the Committee was not conducted by the same office prosecuting the case against appellant. Nor does it appear that the underlying

---

[3]After Petitioner's trial, McCullough was suspended and ultimately disbarred.  Importantly, Petitioner does *not* claim that any of the grounds for the Committee's ethics investigation involved McCullough's conduct in Petitioner's case.

[4]In order to prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate that his attorney's performance was deficient, and that the deficiency prejudiced his defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006). If objectively unreasonable performance is established, the second prong requires a showing that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to Petitioner.  *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005).  Where a court determines that a petitioner has not demonstrated prejudice, under the second prong of *Strickland*, it is unnecessary to examine counsel's performance under the first prong.

> facts involved in appellant's case at trial were in any way entwined with those under investigation by the Committee. Even in those situations that are inherently fraught with potential conflict, such as those where an attorney represents multiple defendants, the defendant asserting a claim of conflict must show that counsel actively represented conflicting interests by a showing of how the conflict actually prejudiced his defense. *See Cook v. State*, 361 Ark. 91, 204 S.W.3d 532 (2005) ( per curiam).
>
> Here, it is not clear how the outcome of appellant's trial, the strategy used or any of the decisions required of counsel in conducting appellant's defense would have had any impact on the investigation or a decision by the Committee concerning trial counsel. Appellant points to no specific instance where a decision by counsel may have been adversely affected by the investigation, and does not indicate that any conduct in this case was included in the Committee's review at that time. To the extent that counsel appears to argue that any effect, even if it may appear a positive one, must be presumed adverse and should require the trial court to find an actual conflict of interest, we do not agree. The only potential effect that may be apparent in the situation presented here is the possibility that counsel may have felt pressured to exert greater care and diligence so as not to bring additional cases under the Committee's review. A conflict by its nature requires opposite interests, not those aligned.

*Walker*, 367 Ark. at 526-27, 241 S.W.3d at 737-38.

In reaching this decision, the Arkansas Supreme Court relied on *Cook v. State*, 361 Ark. 91, 204 S.W.3d 532 (2005) (*per curiam)*, which expressly acknowledged the so-called *Cuyler* rule concerning conflicts of interest. In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Court held that in order to establish a conflict-of-interest claim a defendant must show an active conflict of interest that adversely affected his defense. While prejudice is presumed under *Cuyler*, *if* an actual conflict is established, the United States Supreme Court has been unwilling to extend this presumption beyond those situations in which an attorney has attempted to represent multiple co-defendants. *See Mickens v. Taylor*, 535 U.S. 152, 174-75 (2002). Outside of that narrow situation, a defendant alleging a conflict of interest with his attorney must establish actual prejudice with respect to the outcome of the trial. *Id.* According to the Arkansas Supreme Court, Petitioner did not meet that burden.

Petitioner correctly points out that his underlying criminal case was originally assigned to Circuit Judge Sam Pope, and that a "series of events" led to Judge Pope jailing McCullough for contempt, and ultimately Judge Pope's recusal from the case.[5]  However, beyond Petitioner's conclusory description of those events, he does *not* claim that they were part of the pending ethics investigation against McCullough. More importantly, Petitioner does not articulate how the pending ethics investigation adversely affected the way in which McCullough represented him.

The cases Petitioner relies on to support his position are inapposite. All of those cases involve a criminal defense lawyer under criminal investigation *by the authority prosecuting his or her client*. *See Briguglio v. United States*, 675 F.2d 81 (3rd Cir. 1982) (remanding for evidentiary hearing on ineffective-assistance/conflict-of-interest claim where trial counsel was under criminal investigation by the same United States Attorney's Office that was prosecuting his client); *Thompkins v. Cohen*, 965 F.2d 330 (7th Cir. 1992) (noting that criminal defense lawyer himself under a criminal investigation can create a conflict of interest because it "may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer"); *United States v. Cancilla*, 725 F.2d 867 (2d Cir. 1984) (trial counsel

---

[5] These "events" are detailed in *McCullough v. State*, 353 Ark. 362, 108 S.W.3d 582 (2003). Petitioner was originally represented by Don Gillaspie, and had a trial date of March 20, 2001. The case was continued to April 24, 2001, and McCullough entered his appearance on behalf of Petitioner on April 2, 2001. (Trial Tr. 30.)

The trial was continued until April 5, 2002. McCullough failed to appear when Judge Pope called the case for trial. McCullough apparently had been pulled over for speeding and detained for his failure to pay child support. The trial was continued until June 3, 2002, when McCullough announced he was not ready for trial, and requested that Judge Pope recuse. This led to an exchange between McCullough and Judge Pope which concluded with Judge Pope finding McCullough in contempt and jailing him.

Judge Pope later entered an Order recusing from the case (Trial Tr. 121.) The matter was reassigned to Judge Bynum Gibson, Jr, who presided over Petitioner's trial and Rule 37 proceedings.

labored under conflict of interest where he was under investigation for criminal activities similar to his client's and involved a possible co-conspirator of his client).

Under these circumstances, Petitioner has not shown that the Arkansas Supreme Court's disposition of his conflict claim was contrary to, or an unreasonable application of, federal law, or that it was based on an unreasonable determination of the facts. Thus, the Court concludes that Petitioner's first argument for habeas relief is without merit.

**B.      Failure of Trial Counsel to Inform Petitioner of His "Health Problems"**

Second, Petitioner argues that he was denied his Sixth Amendment right to retained counsel of his choosing because McCullough failed to disclose his alleged health problems to Petitioner. In making this argument, Petitioner does not identify the nature of McCullough's alleged health problems, but cites to an undated Arkansas Democrat-Gazette newspaper article reporting on a lawsuit McCullough filed against two members of the Committee on Professional Conduct. The article reports that McCullough had asserted an American with Disabilities Act claim based on a "number of long standing health problems, some known and some recently learned." (Rule 37 Tr. 28.) Petitioner argues that McCullough's failure to disclose to him these alleged health problems amounted to "structural error," which does not require him to show any resulting prejudice.

The Arkansas Supreme Court considered but rejected this argument in Petitioner's Rule 37 appeal. The Court held that he had failed to demonstrate any prejudice arising from McCullough's failure to disclose his alleged health problems, and that the Sixth Amendment claim did not fall within the category of cases where prejudice was presumed. *Walker*, 367 Ark. at 527, 241 S.W.3d at 738.

Petitioner argues that the Arkansas Supreme Court's holding was an unreasonable

application of *Chandler v. Fretag*, 348 U.S. 3 (1954) and *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). In *Chandler v. Fretag*, 348 U.S. 3 (1954), the Court held that it was reversible error for a state court to deny a defendant's request for a continuance to obtain counsel, and then to put the defendant to a trial without counsel. The Court also explicitly noted that "the right to be heard through his own counsel was unqualified." *Chandler*, 348 U.S. at 5.

In *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52, (2006), the trial court decided not to admit defendant's retained counsel, *pro hac vice*, based on an erroneous interpretation of a disciplinary rule. This prevented defendant from meeting or consulting with his retained attorney throughout trial. The Court held that the trial court's error clearly violated defendant's Sixth Amendment right to counsel of his choice and constituted a structural error that did not require a showing of prejudice. *Id.* at 148.

In this case, Petitioner unquestionably was allowed to proceed to trial with McCullough, who was the retained counsel of his choosing. Petitioner cites no legal authority which supports his theory that McCullough's alleged failure to inform him about his alleged "health problems" somehow rendered him a lawyer who was not of Petitioner's "choosing" for purposes of constitutional analysis. The "choice of counsel" cases cited by Petitioner are clearly not on point. Thus, the Court concludes that the Arkansas Supreme Court's disposition of his Sixth Amendment right-to-counsel claim was neither "contrary to" or an "unreasonable application of clearly established federal law," nor was it an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

**C.      Failure of Trial Counsel to Object to Chain of Custody for Seized Cocaine**

Third, Petitioner argues that McCullough was ineffective for failing to make a chain-of-

custody objection to State's Exhibit 1, the evidence envelope containing the cocaine that was the subject of the underlying criminal charges. According to Petitioner, if such an objection had been made, it would have been sustained, and there would have been no evidence to support his conviction.

At trial, Linda Card, an investigator for the South Central Drug Task Force, testified that she arranged for a CI to make a controlled drug buy from Petitioner. (Trial Tr. 516.) Card testified that State's Exhibit 1 was the bag containing the "items" of rock cocaine or cocaine base that the CI purchased from Petitioner. (Trial Tr. 521, 542.) On cross examination, Card admitted that she was mistaken in writing in multiple reports that the controlled buy resulted in the purchase of cocaine "powder" from Petitioner. (Trial Tr. 539-43, 548.) Card testified that the cocaine was wrapped in aluminum foil, but she could not recall if there was one or multiple foil packages. (Trial Tr. 545-46.) Card gave the cocaine to Agent Dennis Roberts. (Trial Tr. 546.)

The CI, Greg Rice, testified that State's Exhibit 1 was an envelope that contained the "items" he bought from Petitioner. (Tr. 551-52.) According to Rice, he bought an "eight ball" (approximately three grams) of cocaine from Petitioner that was packaged "inside tin foil" in "just one package." (Trial Tr. 554-55, 558.)

Agent Dennis Roberts testified that State's Exhibit 1 was an envelope that he sealed and delivered to the Arkansas State Crime Laboratory for analysis. (Trial Tr. 485-86.) The "items" in State's Exhibit 1 were the same ones he received from Card and that he placed in the envelope. (Trial Tr. 488.) After being recalled as a witness, Roberts characterized the cocaine in State's Exhibit 1 as a "cookie" or a "combination of rock and powder substance." (Trial Tr. 606.)

Tracy Holloway, a forensic chemist with the Arkansas State Crime Laboratory, testified that

she analyzed the contents of State's Exhibit 1. (Trial Tr. 584.) Inside were "rocks and [] powder" that "were wrapped in four individual pieces of aluminum foil." (Trial Tr. 585.) In Holloway's report, she wrote that she recieved "three pieces of off-white rock-like substance" and a "crushed off-white rock substance." (Trial Tr. 592.) These items tested as cocaine hydrochloride. (Trial Tr. 589.)

In Petitioner's Rule 37 appeal, he argued that the discrepancies in the description of the cocaine and its packaging supported a chain-of-custody objection and, if such an objection had been made, it would have been sustained under *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997). In *Crisco*, the Arkansas Supreme Court noted that proof of chain of custody for "interchangeable items" like drugs needed to be "more conclusive." The seizing officer in *Crisco* testified that he placed the substance in an envelope, and that he wrote on the attached submission form that the substance was "one bag of off white powder substance." The receiving crime lab chemist described the substance as a "tan rock-like substance" that tested as methamphetamine. The chemist testified that methamphetamine ordinarily did not change colors and that he would not have described the substance as "off-white powder."

The Court noted that, instead of recalling the officer to give testimony that more specifically identified the substance, the prosecutor argued to the trial court that the officer's mere identification of the envelope was sufficient. The Court found that such a generalized identification was not adequate "where the substance at issue has been described differently by the undercover officer and the chemist, [and] we believe the State was required to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance." *See Crisco*, 328 Ark. at 392, 943 S.W.2d at 585. Thus, the Court held that the trial court abused its discretion in

receiving the substance into evidence over the defendant's chain-of-custody objection.

In Petitioner's Rule 37 appeal, the Arkansas Supreme Court rejected his attempt to analogize the facts in his case to those before the Court in *Crisco*, and concluded that, if McCullough had made a chain-of-custody objection to the cocaine, it would have been overruled:

> Once again, we cannot say that the trial court's findings were clearly erroneous. Appellant contends that inconsistencies in the description of the texture of the substance and the number of packages would have sustained an objection to the admission of the evidence. He cites *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), where we indicated that the proof of the chain of custody for interchangeable items like drugs or blood needs to be more conclusive, and found that the trial court had abused its discretion in receiving a substance into evidence under circumstances where there were inconsistent descriptions of the substance provided by the undercover officer and the chemist who performed the analysis.
>
> This court has consistently held that the purpose of establishing chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). While the State is not required to eliminate every possibility of tampering with the evidence, the trial court must be satisfied within a reasonable probability that there has been no tampering. *Id.* Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law. *Id.*
>
> Here, the circumstances are more similar to those in *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001), than to those in *Crisco*. In *Guydon*, we affirmed on admission of the drugs because we determined that the varied descriptions as to weight were not so markedly different and could have been attributed to differing sensitivity of the scales used. In *Crisco*, the State did not recall the undercover officer in order to identify the substance. Here, the undercover officer did identify the substance as what was received from the informant and passed onto the next officer in the chain, and she further testified that the description in her report was not accurate. Inaccuracies in the number of packages reported were not significant in that they could have been attributed to smaller packages being initially packaged together.
>
> Because the substance was identified by the undercover officer, we cannot say that the conflicting evidence was so significant that the evidence must have been excluded, and we therefore hold that the trial court was not clearly erroneous in determining the objection would not have been sustained. Counsel is not ineffective for failing to make an argument that is meritless, either at trial or on appeal. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001).

*Walker*, 367 Ark. at 528-29, 241 S.W.3d at 739.

Petitioner reasserts his contention that, because the facts in this case are "virtually identical" to those in *Crisco*, the Arkansas Supreme Court unreasonably applied *Strickland* in concluding that a chain-of-custody objection to State's Exhibit 1 would not have been sustained and, as a result, Petitioner was not prejudiced.

This Court disagrees. In denying his Rule 37 Petition, the Arkansas Supreme Court distinguished *Crisco* on the grounds that in this case: (1) investigator Card made it clear in her testimony that she had made a mistake in describing the cocaine in her reports; and (2) the items in the envelope were specifically identified at trial as those that were received from the CI and passed along in the chain of custody. Under these circumstances, the Court cannot say that the Arkansas Supreme Court's disposition of this claim was "contrary to" or an "unreasonable application of clearly established federal law," or an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

**D.    Trial Court's Decision to Deny Rule 37 Petition Without an Evidentiary Hearing or Discovery**

Finally, Petitioner argues that the trial court denied him a "fundamentally fair" Rule 37 proceeding by denying his requests for an evidentiary hearing and by refusing to grant his request to compel production of McCullough's files.[6] According to Petitioner, these errors deprived him of his Fourteenth Amendment Due Process right to a "fundamentally fair" state-court postconviction

---

[6]Petitioner requested this discovery in hopes that, after reviewing McCullough's files, he would find new Rule 37 claims that could be added to his Rule 37 Petition.

proceeding.[7]  In support of this argument, Petitioner cites *Pennsylvania v. Finley*, 481 U.S. 551 (1987), a case holding that the "fundamental fairness mandated by the Due Process Clause" of the Fourteenth Amendment did not require states to appoint counsel for indigent prisoners seeking postconviction relief.  He also cites *Hicks v. Oklahoma*, 447 U.S. 343, 345-47 (1980), holding that when state law guaranteed a defendant that his punishment would be decided by a jury, denying him this right, in contravention of state law, was also a due process violation.

In Petitioner's Rule 37 appeal, the Arkansas Supreme Court concluded that the trial court did not abuse its discretion in denying Petitioner's requests for an evidentiary hearing and to conduct discovery.  The Court specifically held that the Rule 37 Petition and record were sufficient to support the denial of Rule 37 relief, without a hearing or any further discovery.  *Walker*, 367 Ark. at 529, 241 S.W.3d at 739-40.

Courts have consistently rejected federal habeas claims premised on alleged defects in state court postconviction proceedings.  *See Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994) (rejecting due process claim based on state post-conviction court's verbatim adoption of the prosecution's proposed findings of fact — "the conduct of the state post-conviction relief court cannot constitute independent grounds for federal habeas relief"); *Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir. 1989) (rejecting habeas claim that state court's denial of Rule 37 petition without a hearing and written findings was a due process violation — the petitioner did not allege the "violation of any constitutional standard which may apply either to Arkansas's post-conviction review process in

---

[7]Although not raised by Respondent, the Court believes Petitioner may have procedurally defaulted this claim by failing to raise the federal constitutional issue in his Rule 37 appeal to the Arkansas Supreme Court.  While Petitioner did raise the trial court's errors in his Rule 37 Appellate Brief, those arguments were couched only as violations of *state law*.  *See* docket entry #11, Ex. C.

general or to the application of that process in this case."); *Sellers v. Ward*, 135 F.3d 1333 (10th Cir. 1998) (alleged constitutional error focused "only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); *Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (§ 2554 habeas petitioner alleging an equal protection claim that state postconviction court erroneously held that petitioner could be tried as an adult in contravention of state substantive law was meritless — "we agree with the district court that this claim, a challenge to Virginia's state habeas corpus proceedings, cannot provide a basis for federal habeas relief.").

Petitioner has not demonstrated that he was deprived of a "fundamentally fair" postconviction proceeding. Petitioner cites to no authority that an evidentiary hearing or production of trial counsel's files is required in a state postconviction proceeding, either as a matter of federal constitutional law or in the context of a Rule 37 proceeding. As noted by the Arkansas Supreme Court in Petitioner's Rule 37 appeal, these matters were discretionary with the trial court. *See*, *e.g. Sparkman v. State*, 373 Ark. 45, 48, 281 S.W.3d 277, 280 (2008) (it is "undisputed that a circuit court has discretion pursuant to Rule 37.3(a) to decide whether the files or records are sufficient to sustain the court's findings without a hearing.") The Arkansas Supreme Court concluded that the trial court acted within its discretion in denying his requests for an evidentiary hearing and discovery. The Court cannot say that these decisions were either "contrary to" or an "unreasonable application of clearly established federal law," or an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Petition for Habeas Corpus under 28 U.S.C. §

2254 (docket entry #1) is DENIED, and the case DISMISSED, WITH PREJUDICE.

Dated this 22nd day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE